MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

ARMANDO MARTINEZ, DIEGO FABIAN
COCHA GAONA, GABRIEL GARCIA,
JERONIMO RIVERA, and LUIS ALBERTO
BOTZOTZ QUINO, *individually and on
behalf of others similarly situated,*

                              *Plaintiffs,*

                   -against-

SJG FOODS LLC (d/b/a BENARES) (f/k/a
BALUCHI'S), TRIBECA RESTAURANT
LLC (d/b/a BENARES), (f/k/a BALUCHI'S)
RAKESH AGGARWAL, INDER SINGH,
GURVINDER SAHNI, RANJIT SINGH,
YOGEETA SAHNI, and SUKHDEV SINGH
                           *Defendants.*
--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

      Plaintiffs Armando Martinez, Diego Fabian Cocha Gaona, Gabriel Garcia, Jeronimo

Rivera, and Luis Alberto Botzotz Quino, individually and on behalf of others similarly situated

(collectively the "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates,

P.C., upon their knowledge and belief, and as against SJG Foods LLC (d/b/a Benares) (f/k/a

Baluchi's), and Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's), ("Defendant

Corporations"), Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni,

and Sukhdev Singh (collectively the "Defendants") allege as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs are former employees of Defendants SJG Foods LLC (d/b/a Benares) (f/k/a Baluchi's), Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's), Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh.

2.      Defendants own, operate, or control two Indian restaurants one of which is located at 240 W. 56th Street, New York, New York 10019 (hereafter the "56th Street location") and the other one is located at 45 Murray Street, New York, New York 10007 (hereafter the "Murray Street location") under the names Benares and Baluchi's respectively.

3.      Upon information and belief, individual Defendants Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh serve or served as owners, managers, principals or agents of Defendants SJG Foods LLC (d/b/a Benares) (f/k/a Baluchi's) and Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's) ("Defendant Corporations"), and through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs are former employees of Defendants. They were ostensibly employed as delivery workers, but they were required to spend a considerable part of their workday performing non-tipped, non-delivery work, including various restaurant duties such as making sauces, cutting onions, making Mango Lassi (a beverage), dressings, and salads, ordering for inventory, stocking liquor and delivery supplies, cutting cardboard, bringing up drinks from the basement, serving customers water, and transporting items between restaurants, cleaning the kitchen and the walls, sweeping (hereinafter "non-tipped non-delivery duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties required a significant amount of time spent in non-tipped, non-delivery duties.

8.      Regardless, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

9.      In addition, under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday.  12 N.Y. C.R.R. §146.

10.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs a lower tip-credited rate, and they still failed to pay it.

11.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

- 3 -

12.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.  At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work without providing the minimum wage compensation required by federal and state law and regulations.

13.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

15.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate(d) two restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

- 4 -

16.    Plaintiff Armando Martinez ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Bronx County, New York. Plaintiff Martinez was employed by Defendants from approximately September 2012 until on or about August 22, 2016.

17.    During the course of his employment, Plaintiff Martinez worked at Defendants' 56th Street location.

18.    Plaintiff Diego Fabian Cocha Gaona ("Plaintiff Cocha" or "Mr. Cocha") is an adult individual residing in Kings County, New York. Plaintiff Cocha was employed by Defendants from approximately May 2012 until on or about July 2015 and from approximately September 2015 until on or about August 2016.

19.    During the course of his employment, Plaintiff Cocha worked at Defendants' 56th Street location.

20.    Plaintiff Gabriel Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Bronx County, New York.  Plaintiff Garcia was employed by Defendants from approximately August 1, 2015 until on or about August 1, 2016.

21.    During the course of his employment, Plaintiff Garcia worked at Defendants' 56th Street location.

22.    Plaintiff Jeronimo Rivera ("Plaintiff Rivera" or "Mr. Rivera") is an adult individual residing in Bronx County, New York. Plaintiff Rivera was employed by Defendants from approximately August 2013 until on or about June 2014 and from approximately September 2015 until on or about August 2016.

23.    From approximately August 2013 until on or about June 2014, Plaintiff Rivera worked at Defendants' Murray Street location and from approximately September 2015 until on or about August 2016, Plaintiff Rivera worked at Defendants' 56th Street location.

24. Plaintiff Luis Alberto Botzotz Quino ("Plaintiff Alberto" or "Mr. Alberto") is an adult individual residing in Queens County, New York. Plaintiff Alberto was employed by Defendants from approximately August 2013 until on or about February 2016.

25. During the course of his employment, Plaintiff Alberto was employed at Defendants' 56th Street location.

*Defendants*

26. At all relevant times, Defendants owned, operated, and/or controlled two Indian restaurants one of which is located at 240 West 56th Street, New York, New York 10019 (d/b/a Benares) (f/k/a Baluchi's) and the other one is located at 45 Murray Street, New York, New York 10007 (d/b/a Benares) (f/k/a Baluchi's).

27. Upon information and belief SJG Foods LLC (d/b/a Benares) (f/k/a Baluchi's), is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 240 West 56th Street, New York, New York 10019.

28. Upon information and belief, Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 45 Murray Street, New York, New York 10007.

29. Defendant Rakesh Aggarwal is an individual engaging in business in this judicial district during the relevant time period. Defendant Rakesh Aggarwal is sued individually in his capacity as an owner, officer and/or agent of Defendant corporations. He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. He determined the

wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

30.     Defendant Inder Singh is an individual engaging in business in this judicial district during the relevant time period. Defendant Inder Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

31.     Defendant Gurvinder Sahni is an individual engaging in business in this judicial district during the relevant time period. Defendant Gurvinder Sahni is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

32.     Defendant Ranjit Singh is an individual engaging in business in this judicial district during the relevant time period. Defendant Ranjit Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant

Corporations, or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

33.     Defendant Yogeeta Sahni is an individual engaging in business in this judicial district during the relevant time period. Defendant Yogeeta Sahni is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations. He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

34.     Defendant Sukhdev Singh is an individual engaging in business in this judicial district during the relevant time period.  Defendant Sukhdev Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations.  He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

35.     Defendants own(ed), operate(d), and/or control(led) two Indian restaurants located at multiple locations in New York, including 240 West 56th Street, New York, New York 10019 (d/b/a Benares) (f/k/a Baluchi's) and 45 Murray Street, New York, New York 10007 (d/b/a Benares) (f/k/a Baluchi's).

36.     Individual Defendants, Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh possess or possessed operational control over Defendant Corporations, possess or possessed ownership interests in one or more of the Defendant Corporations, and control or controlled significant functions of one or more of the Defendant Corporations.

37.     Defendants possess or possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

38.     Defendants employ Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

39.     At all relevant times, Defendants were Plaintiffs' employer within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

40.     In each year from 2012 to 2016, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

41.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce.  As an example, numerous items that were used in the restaurants on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

42.     Plaintiffs are former employees of Defendants ostensibly employed as delivery workers. However, Plaintiffs were also required to perform the non-delivery non-tip duties described above.

43.     They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Armando Martinez*

44.     Plaintiff Martinez was employed by Defendants from approximately September 2012 until on or about August 22, 2016.

45.     Defendants ostensibly employed Plaintiff Martinez as a delivery worker. However, Plaintiff Martinez also was required to perform the non-delivery non-tip duties described above.

46.     Although Plaintiff Martinez ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

47.     Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

- 10 -

48.     Plaintiff Martinez's work duties required neither discretion nor independent judgment.

49.     Plaintiff Martinez regularly worked in excess of 40 hours a week.

50.     From approximately September 2012 until on or about August 22, 2016, Plaintiff Martinez worked from approximately 3:30 p.m. until on or about 11:30 p.m. three days a week and from approximately 4:00 p.m. until on or about 11:00 p.m. four days a week (typically 52 hours per week).

51.     Plaintiff Martinez was paid his wages in cash.

52.     From approximately September 2012 until on or about September 2014, Defendants paid Plaintiff Martinez a fixed salary of $16 per day.

53.     From approximately September 2014 until on or about December 2015, Defendants paid Plaintiff Martinez a fixed salary of $20 per day.

54.     From approximately December 2015 until on or about August 22, 2016, Defendants paid Plaintiff Martinez a fixed salary of $25 per day.

55.     Plaintiff Martinez's salary did not vary even when he was required to arrive early, stay late or work a longer day than his usual schedule.

56.     In fact, Defendants regularly required Plaintiff Martinez to begin working 30 minutes prior to his scheduled start time and to work 30 minutes past his scheduled stop time and did not compensate him for the additional time they required him to work.

57.     Defendants never granted Plaintiff Martinez a meal break or rest period of any kind.

58.     Plaintiff Martinez was never notified by Defendants that his tips would be included as an offset for wages.

- 11 -

59.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Martinez's wages.

60.     For a considerable portion of his employment with defendants, Plaintiff Martinez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

61.      Further, defendants did not provide Plaintiff Martinez with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

62.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Martinez regarding wages under the FLSA and NYLL.

63.     Defendants did not give any notice to Plaintiff Martinez in English and in Spanish (Plaintiff Martinez's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

64.     Defendants required Plaintiff Martinez to purchase "tools of the trade" with his own funds—including six vests, five helmets, three bicycles, six locks, six chains, and bike maintenance.

*Plaintiff Diego Fabian Cocha Gaona*

65.     Plaintiff Cocha was employed by Defendants from approximately May 2012 until on or about July 2015 and from approximately September 2015 until on or about August 2016.

66.     Defendants ostensibly employed Plaintiff Cocha as a delivery worker. However, Plaintiff Cocha also was required to perform the non-delivery non-tip duties described above.

- 12 -

67.     Although Plaintiff Cocha ostensibly was employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

68.     Plaintiff Cocha regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

69.     Plaintiff Cocha's work duties required neither discretion nor independent judgment.

70.     From approximately May 2012 until on or about July 2015, Plaintiff Cocha worked from approximately 4:00 p.m. until on or about 10:30 p.m. four days a week and from approximately 4:00 p.m. until on or about 11:30 p.m. two days a week (typically 41 hours per week).

71.     From approximately September 2015 until on or about August 2016, Plaintiff Cocha worked from approximately 4:30 p.m. until on or about 10:30 p.m. three days a week and from approximately 4:30 p.m. until on or about 11:00 p.m. three days a week (typically 37.5 hours per week).

72.     Throughout his employment with Defendants, Plaintiff Cocha was paid his wages in cash.

73.     From approximately May 2012 until on or about July 2015 and from September 2015 until on or about December 2015, Plaintiff Cocha was paid a fixed salary of $20.00 per day.

74.     From approximately January 2016 until on or about August 2016, Plaintiff Cocha was paid a fixed salary of $25.00 per day.

- 13 -

75.     Plaintiff Cocha's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

76.     In fact, Defendants regularly required Plaintiff Cocha to work at least one hour past his scheduled stop time and did not pay him for the additional time they required him to work.

77.     Defendants never granted Plaintiff Cocha a meal break or rest period of any kind.

78.     Plaintiff Cocha was never notified by Defendants that his tips were being included as an offset for wages.

79.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cocha's wages.

80.     For a considerable portion of his employment with defendants, Plaintiff Cocha was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

81.      Further, defendants did not provide Plaintiff Cocha with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

82.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cocha regarding wages under the FLSA and NYLL.

83.     Defendants did not give any notice to Plaintiff Cocha, in English and in Spanish (Plaintiff Cocha's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

84.     Defendants required Plaintiff Cocha to purchase "tools of the trade" with his own funds—including five helmets, ten bikes, lights, lock and key, and four vests.

- 14 -

*Plaintiff Gabriel Garcia*

85.     Plaintiff Garcia was employed by Defendants from approximately August 1, 2015 until on or about August 1, 2016.

86.     Defendants ostensibly employed Plaintiff Garcia as a delivery worker.  However, Plaintiff Garcia was also required to perform the non-delivery non-tip duties described above.

87.     Although Plaintiff Garcia was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

88.     Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

89.     Plaintiff Garcia's work duties required neither discretion nor independent judgment.

90.     From approximately August 1, 2015 until on or about August 1, 2016, Plaintiff Garcia worked from approximately 4:00 p.m. until on or about 10:00 p.m. or 11:00 p.m. Wednesdays through Mondays (typically 39 hours per week).

91.     Throughout his employment with Defendants, Plaintiff Garcia was paid his wages in cash.

92.     From approximately August 1, 2015 until on or about August 1, 2016, Plaintiff Garcia was paid a fixed salary of $25.00 per day.

93.     Plaintiff Garcia's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

94.     In fact, Defendants regularly required Plaintiff Garcia to begin working one hour prior to his scheduled start time and to continue working at least 30 minutes past his scheduled stop time and did not compensate him for the additional time they required him to work.

95.     Defendants never granted Plaintiff Garcia a meal break or rest period of any kind.

96.     Defendants never notified Plaintiff Garcia that his tips were being included as an offset for wages.

97.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

98.     For a considerable portion of his employment with defendants, Plaintiff Garcia was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

99.      Further, defendants did not provide Plaintiff Garcia with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

100.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding wages under the FLSA and NYLL.

101.    Defendants did not give any notice to Plaintiff Garcia in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

102.    Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including one bicycle, a helmet, lights, and a chain for the bike.

*Plaintiff Jeronimo Rivera*

- 16 -

103.    Plaintiff Rivera was employed by Defendants from approximately August 2013 until on or about June 2014 at the Murray Street location and from approximately September 2015 until on or about August 2016 at the 56th Street location.

104.    Defendants ostensibly employed Plaintiff Rivera as a delivery worker. However, Plaintiff Rivera also was required to perform the non-delivery non-tip duties described above.

105.    Although Plaintiff Rivera ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

106.    Plaintiff Rivera regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

107.    Plaintiff Rivera's work duties required neither discretion nor independent judgment.

108.    Plaintiff Rivera regularly worked in excess of 40 hours a week.

109.    From approximately August 2013 until on or about June 2014, Plaintiff Rivera worked at the Murray Street location from approximately 10:45 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 11:00 p.m. five days a week and from approximately 10:45 a.m. until on or about 11:00 p.m. one day a week (typically 63.5 hours per week).

110.    From approximately September 2015 until on or about October 2015, Plaintiff Rivera worked at the 56th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 10:30 p.m. five days a week and from approximately 11:00 a.m. until on or about 10:30 p.m. two days a week (typically 70.5 hours per week).

111.    From approximately November 2015 until on or about January 2016, Plaintiff Rivera worked at the 56th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 10:30 p.m. five days a week and from approximately 11:00 a.m. until on or about 10:30 p.m. one day a week (typically 59 hours per week).

112.    From approximately January 2016 until on or about March 2016, Plaintiff Rivera worked at the 56th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 10:30 p.m. five days a week and from approximately 11:00 a.m. until on or about 10:30 p.m. two days a week (typically 70.5 hours per week).

113.    From approximately March 2016 until on or about August 2016, Plaintiff Rivera worked at the 56th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 10:30 p.m. five days a week and from approximately 11:00 a.m. until on or about 10:30 p.m. one day a week (typically 59 hours per week).

114.    Throughout his employment with Defendants, Plaintiff Rivera was paid his wages in cash.

115.    From approximately August 2013 until on or about June 2014 and from approximately September 2015 until on or about August 2016 Plaintiff Rivera was paid a fixed salary of $50.00 per day.

116.    Plaintiff Rivera's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

117.   In fact, Defendants regularly required Plaintiff Rivera to start working 15 minutes prior to his scheduled start time and to continue working at least 30 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

118.   Plaintiff Rivera was not granted a meal break or rest period when he worked on the weekends.

119.   Plaintiff Rivera never was notified by Defendants that his tips would be included as an offset for wages.

120.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rivera's wages.

121.   For a considerable portion of his employment with defendants, Plaintiff Rivera was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

122.   Further, defendants did not provide Plaintiff Rivera with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

123.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rivera regarding wages under the FLSA and NYLL.

124.   Defendants did not give any notice to Plaintiff Rivera, in English and in Spanish (Plaintiff Rivera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

125.   Defendants required Plaintiff Rivera to purchase "tools of the trade" with his own funds—including one bike, a helmet, lights, chains, and a vest.

*Plaintiff Luis Alberto Botzotz Quino*

- 19 -

126.    Plaintiff Alberto was employed by Defendants from approximately August 2013 until on or about February 2016.

127.    Defendants ostensibly employed Plaintiff Alberto as a delivery worker. However, Plaintiff Alberto also was required to perform the non-delivery non-tip duties described above.

128.    Although Plaintiff Alberto ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

129.    Plaintiff Alberto regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

130.    Plaintiff Alberto's work duties required neither discretion nor independent judgment.

131.    Plaintiff Alberto regularly worked in excess of 40 hours a week.

132.    From approximately August 2013 until on or about February 2016, Plaintiff Alberto worked from approximately 10:00 a.m. until on or about 4:00 p.m. and from approximately 5:00 p.m. until on or about 10:00 p.m. five or six days a week (typically 55 to 66 hours per week).

133.    Throughout his employment with defendants, Plaintiff Alberto was paid his wages in cash.

134.    From approximately August 2013 until on or about February 2016, Plaintiff Alberto was paid a fixed salary of $50.00 per day.

135.    Plaintiff Alberto was never notified by Defendants that his tips would be included as an offset for wages.

136.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Alberto's wages.

137.    For a considerable portion of his employment with defendants, Plaintiff Alberto was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

138.    Further, defendants did not provide Plaintiff Alberto with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

139.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alberto regarding wages under the FLSA and NYLL.

140.    Defendants did not give any notice to Plaintiff Alberto in English and in Spanish (Plaintiff Alberto's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

141.    Defendants required Plaintiff Alberto to purchase "tools of the trade" with his own funds—including bike supplies and repairs.

*Defendants' General Employment Practices*

142.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

143.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

144.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

145.     Defendants habitually required some Plaintiffs to work additional time beyond their regular shifts but did not provide them with any additional compensation.

146.     At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

147.     Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

148.     Defendants required Plaintiffs to perform the jobs of multiple employees in addition to their primary responsibilities as delivery workers. These responsibilities included the non-delivery, non-tip duties described above.

149.     Regardless, Plaintiffs were paid at a rate that was lower than the required tip-credit rate by Defendants; however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

150.     New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

151.    Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated occupations with duties including the non-delivery, non-tip duties described above.

152.    In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at a rate that was lower than the required tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

153.    Defendants failed to post required wage and hour posters in the restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' lack of sophistication in wage and hour laws.

154.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

155.    All Plaintiffs were paid their wages entirely in cash at both locations.

156.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

157.    Defendants employed Plaintiffs as delivery workers and required them to provide their own locks, chains, helmets, and bicycles, and refused to compensate them or reimburse them for these expenses.

158.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

159.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

160.   Defendants also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

161.   Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

162.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

163.     Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

164.     At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

165.     At all relevant times, Plaintiffs, and other members of the FLSA class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage,

- 25 -

overtime and one and one half times the regular rate and willfully failing to keep records required by the FLSA.

166.     The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

167.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein

168.     At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

169.     Defendants failed to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

170.     Defendants' failure to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

171.     Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

172.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.     Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

174.     Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

- 26 -

175.     Plaintiffs were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)**

176.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

177.     Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

178.     Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of NYLL § 663.

179.     Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE OVERTIME PROVISIONS OF THE**
**NEW YORK LABOR LAW)**

180.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181.     Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 146-1.4, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

182.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of NYLL § 663.

183.     Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR)**

184.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

185.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

186.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

187.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

188.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

189.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

190.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

191.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

192.    Defendants never provided Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

193.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

- 28 -

194.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

195.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their job, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

196.    Plaintiffs were damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective

collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)       Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)       Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)       Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)       Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)       Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)       Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)       Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)       Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)       Awarding Plaintiffs damages for the amount of unpaid minimum and overtime

wages, and for any improper deductions or credits taken against wages, as well as awarding

spread of hours pay under the NYLL, as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and

recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred

percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime

compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages

pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-

judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs (including the prospective collective class members) the

expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.


Dated: New York, New York
        October 8, 2016

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

_____/s/ Michael Faillace_____

By:    Michael A. Faillace [MF-8436]
       60 East 42nd Street, Suite 2540
       New York, New York 10165
       (212) 317-1200
       *Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Armando Martinez

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                        _Armando M._

Signature / Firma:

                                        29 de agosto de 2016

Date / Fecha:

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 29, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Diego Fabian Cocha Gaona

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          29 de agosto de 2016

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165
_____

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 9, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Luis Alberto Botzotz Quino

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                            09 de septiembre de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 16, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              **Gabriel Garcia**

                                            Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                            16 de septiembre de 2016

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 19, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                           **Jeronimo Rivera**

                                         Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                         19 de septiembre de 2016

Date / Fecha:

*Certified as a minority-owned business in the State of New York*